No. 15-11240-EE

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

◆

ALEIDA JOHNSON,

Appellant,

v.

MIDLAND FUNDING, LLC,

Appellee.

◆

On Appeal from the United States District Court
for the Southern District of Alabama
Southern Division
1:14-CV-00322-WS-C

BRIEF OF APPELLEE
MIDLAND FUNDING, LLC

Attorneys for Appellees:

Jason B. Tompkins
Chase T. Espy
Balch & Bingham LLP
1901 Sixth Avenue North
Suite 1500
Birmingham, Alabama 35203
Telephone: (205) 251-8100
Facsimile:  (205) 226-8798

September 14, 2015

## <u>CERTIFICATE OF INTERESTED PERSONS</u>
## <u>AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, counsel for Defendant-Appellee Midland Funding, LLC, certify to the best of the undersigned's knowledge that, in addition to the list of persons and entities disclosed by counsel for Plaintiff-Appellant, the following entities, including affiliates with a direct or indirect ownership interest in Appellee Midland Funding, LLC, have an interest in the outcome of this case:

**I.    Trial Judges:**

    1)    **Cassady, William E.** (U.S. Magistrate Judge);

    2)    **Steele, William H.** (U.S. District Judge).

**II.    Attorneys/Law Firms:**

    1)    **Balch & Bingham LLP** (Attorneys for Defendant-Appellee, Midland Funding, LLC);

    2)    **Espy, Chase T.** (Attorney for Defendant-Appellee, Midland Funding, LLC);

    3)    **Geyser, Daniel L.** (Attorney for Plaintiff-Appellant Aleida Johnson);

    4)    **McKool Smith, P.C.** (Attorneys for Plaintiff-Appellant Aleida Johnson);

    5)    **Riemer, Kenneth J.** (Attorney for Plaintiff-Appellant Aleida Johnson);

    6)    **Tompkins, Jason B.** (Attorney for Defendant-Appellee, Midland Funding, LLC);

    7)    **Underwood, Jr., Earl P.** (Attorney for Plaintiff-Appellant Aleida Johnson);

8) **Underwood & Riemer, P.C.** (Attorneys for Plaintiff-Appellant Aleida Q. Johnson).

## III. Related Entities:

1) **Midland Portfolio Services, Inc.** owns 100% of the interests in Defendant-Appellee Midland Funding, LLC;

2) **Midland Credit Management, Inc.** owns 100% of the interests in Midland Portfolio Services, Inc.

3) **Encore Capital Group, Inc.** (a publicly held corporation which trades under NASDAQ symbol ECPG) owns 100% of the interests in Midland Credit Management, Inc.

Dated this 14th day of September, 2015.


*/s/ Jason B. Tompkins*
One of the Attorneys for
Defendant-Appellee Midland Funding, LLC

## STATEMENT REGARDING ORAL ARGUMENT

Though this case presents an issue of first impression in this circuit, the Court does not write upon a blank slate; therefore, Midland believes oral argument is unnecessary. Every court of appeals that has addressed the intersection of the Bankruptcy Code and the Fair Debt Collection Practices Act ("FDCPA") has recognized that there are circumstances where the former trumps the latter, though they are not unanimous on the scope of that preclusion.[1] In this case, the district court adopted the *narrowest* formulation, concluding that the Bankruptcy Code precludes operation of the FDCPA only to the extent that the two statutory schemes cannot be reconciled. That is the same concept this Court embraced when addressing the conflict between the Bankruptcy Code and another federal statute.[2]

Here, to the extent that it would prohibit a creditor from filing an accurate proof of claim for an out-of-statute debt, the FDCPA would nullify a creditor's *right* under the Bankruptcy Code to file a proof of claim. The district court therefore correctly reasoned that the FDCPA is precluded by the Bankruptcy Code to the extent that they irreconcilably conflict.

---

[1] *See Simon v. FIA Card Servs., N.A.*, 732 F.3d 259 (3d Cir. 2013); *Simmons v. Roundup Funding, LLC*, 622 F.3d 93 (2d Cir. 2010); *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004); *Walls v. Wells Fargo Bank*, 276 F.3d 502 (9th Cir. 2002).

[2] *See* (Doc. 28, at 15 n.23) ("The present situation parallels that in *Devall*, and with like result.") (citing *United States v. Devall*, 704 F.2d 1513, 1515 (11th Cir. 1983) (concluding that Bankruptcy Code controlled where it authorized conduct that the Social Security Act prohibited)).

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
     DISCLOSURE STATEMENT...................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF CITATIONS ........................................................................iv

STATEMENT OF THE ISSUE................................................................1

ARGUMENT AND CITATIONS OF AUTHORITY ...........................................6

I.    Midland was entitled under the Bankruptcy Code to file its proof of
    claim for Johnson's debt because it retained a right to payment despite
    the lapse of the limitations period..................................................6

    A.    The plain language of the Bankruptcy Code provides that Midland
        had a right to file its proof of claim......................................7

    B.    A "right to payment" need not be enforceable for a creditor to file
        a proof of claim. ..............................................................8

        1.    A bankruptcy creditor's "right to payment" necessarily is
            broader than a claim that is "enforceable" in state court. ..........9

        2.    The structure and purpose of the claims-allowance process
            under the Bankruptcy Code and Rules authorize the filing
            of unenforceable claims. ..............................................13

    C.    Stale proofs of claim are not sanctionable or otherwise forbidden,
        especially since there are reasons why a debtor may actually *want*
        such claims to be filed. ......................................................18

II.    Johnson's claim presents an irreconcilable conflict between the FDCPA
    and the Code, because the FDCPA would prohibit creditors from
    exercising their rights under the Bankruptcy Code. .....................................24

    A.    The district court rightly concluded that Johnson's FDCPA claim
        irreconcilably conflicts with Midland's rights under the
        Bankruptcy Code..............................................................26

    B.    The conflict between Johnson's FDCPA claim and the Bankruptcy
        Code cannot be reconciled by suggesting that Midland can comply
        with both statutes by surrendering its right to file a proof of claim....32

III.    The FDCPA must yield to the Code only to the extent they are in
        conflict. ...................................................................................................35

        A.      The FDCPA is impliedly repealed by the Bankruptcy Code to the
                extent that it prohibits a creditor from exercising its rights under
                the Code. ................................................................................................36

        B.      Because Johnson's FDCPA claim irreconcilably conflicts with
                Midland's rights under the Bankruptcy Code, this Court need not
                consider whether the Code more broadly precludes the FDCPA. .......39

        C.      There remains a sphere of operation for the FDCPA in the
                bankruptcy context. ...............................................................................41

CONCLUSION ...................................................................................................43

CERTIFICATE OF COMPLIANCE .......................................................................45

CERTIFICATE OF SERVICE ...............................................................................46

# <u>TABLE OF CITATIONS</u>

## <u>CASES</u>

*B-Real, LLC v. Rogers*,
   405 B.R. 428 (M.D. La. 2009)................................................................. passim

*Brock v. Resurgent Capital Servs., LP*,
   No. 14-CV-0324-WS-M, 2015 WL 4985700 (S.D. Ala. Aug. 20, 2015).. passim

*Carranza v. Midland Funding, LLC*,
   No. 15-CV-559, 2015 WL 5008462 (E.D. Mo. Aug. 20, 2015) ........................17

*Cohen* v. *de la Cruz*,
   523 U.S. 213, 118 S. Ct. 1212 (1998).................................................................11

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
   543 U.S. 157, 125 S. Ct. 577 (2004).....................................................................2

*Crawford* v. *LVNV Funding, LLC*,
   758 F.3d 1254 (11th Cir. 2014) ................................................................ passim

*FCC* v. *NextWave Pers. Comms. Inc.*,
   537 U.S. 293, 123 S. Ct. 832 (2003).................................................................11

*Hinkle v. Northland Grp. Inc.*,
   No. 11-CV-084, 2011 WL 6748504 (S.D. Ga. Nov. 22, 2011) ........................22

*In re Bunch*,
   No. 14-80864-JAC-13, 2014 WL 6661692 (Bankr. N.D. Ala. Oct. 8, 2014)....19

*In re Charter Co.*,
   862 F.2d 1500 (11th Cir. 1989) ........................................................................23

*In re Charter Co.*,
   876 F.2d 866 (11th Cir. 1989) .............................................................. 11, 12, 24

*In re Chaussee*,
   399 B.R. 225 (B.A.P. 9th Cir. 2008) ......................................................... 20, 30

*In re Claudio*,
   463 B.R. 190 (Bankr. D. Mass. 2012) ..............................................................16

*In re Edge*,
   60 B.R. 690 (Bankr. M.D. Tenn. 1986)............................................................16

*In re Feggins*,
   No. 13-11319-WRS, 2015 WL 5011224 (Bankr. M.D. Ala. Aug. 24, 2015)....23

*In re Herron*,
   381 B.R. 184 (Bankr. D. Md. 2008) ................................................................18

*In re Keeler*,
   440 B.R. 354 (Bankr. E.D. Pa. 2009) .............................................................8

*In re Mazyck*,
   521 B.R. 726 (Bankr. D.S.C. 2014) ..............................................................16

*In re McLean*,
   794 F.3d 1313 (11th Cir. 2015) ...................................... 8, 13, 15, 43

*In re Nussman,*
   501 B.R. 297 (Bankr. E.D.N.C. 2013) ..........................................................16

*In re Raines*,
   183 B.R. 299 (Bankr. M.D. Fla. 1995) .........................................................22

*In re Sekema,*
   523 B.R. 651 (Bankr. N.D. Ind. 2015) .......................................... 18, 19, 20

*In re Varona*,
   388 B.R. 705 (Bankr. E.D. Va. 2008)........................................... 16, 21

*In re Williams*,
   392 B.R. 882 (Bankr. M.D. Fla. 2008) .........................................................16

*In re Yancey,*
   301 B.R. 861 (Bankr. W.D. Tenn. 2003)........................................................17

*Johnson* v. *Home State Bank*,
   501 U.S. 78, 111 S. Ct. 2150 (1991)................................................................11

*Miccosukee Tribe of Indians of Florida v. U.S. Army Corps of Engineers*,
   619 F.3d 1289 (11th Cir. 2010) ......................................................................2

*Pennsylvania Dep't of Pub. Welfare v. Davenport*,
   495 U.S. 552, 110 S. Ct. 2126 (1990)................................... 7, 9, 10, 11

*Posadas v. Nat'l City Bank of New York,*
   296 U.S. 497, 56 S. Ct. 349 (1936)................................................................5

*Randolph v. IMBS, Inc.*,
   368 F.3d 726 (7th Cir. 2004) .......................................................... passim

*Ray v. Spirit Airlines, Inc.*,
   767 F.3d 1220 (11th Cir. 2014) ......................................................................27

*Reese v. Ellis, Painter, Ratterree & Adams, LLP*,
   678 F.3d 1211 (11th Cir. 2012) .......................................................................7

*Rhodes v. Diamond*,
   433 F. App'x 78 (3d Cir. 2011) ..........................................................32

*Rios v. Bakalar & Associates, P.A.*,
   795 F. Supp. 2d 1368 (S.D. Fla. 2011) ...............................................22

*Simmons v. Roundup Funding, LLC*,
   622 F.3d 93 (2d Cir. 2010) ...................................................... i, 26, 40

*Simon v. FIA Card Servs., N.A.*,
   732 F.3d 259 (3d Cir. 2013) .................................................... passim

*Torres v. Asset Acceptance, LLC*,
   -- F. Supp. 3d. --, No. 14-CV-6542, 2015 WL 1529297 (E.D. Pa. Apr. 7,
   2015) ...................................................................................................34

*Townsend v. Quantum3 Grp., LLC*,
   No. 14-CV-1301, 2015 WL 4603410 (M.D. Fla. July 29, 2015)............ 3, 31, 32

*United States v. Devall*,
   704 F.2d 1513 (11th Cir. 1983) ............................................... passim

*Walls v. Wells Fargo Bank*,
   276 F.3d 502 (9th Cir. 2002) .................................................. i, 26, 30

*Wolferd v. Phelan*,
   No. 09-CV-1302, 2013 WL 6061562 (E.D. Pa. Nov. 18, 2013)......................32

## STATUTES

11 U.S.C. § 101(5)(A).........................................................................3, 11

11 U.S.C. § 108(c) ................................................................................20

11 U.S.C. § 501(a) ..................................................................................7

11 U.S.C. § 502(b)(1).................................................................. 15, 16, 42

11 U.S.C. § 523(a)(3).............................................................................22

11 U.S.C. § 704(a)(5).............................................................................14

11 U.S.C. § 1302(b)(1)...........................................................................14

11 U.S.C. § 1328(c)(2)...........................................................................22

Ala. Code § 6-2-32................................................................................20

## RULES

Rule 3001, Fed. R. Bankr. P. ..................................................................13

vi

Rule 3001, Fed. R. Bankr. P., Advisory Comm. Cmts............................................14

Rule 9011, Fed. R. Bankr. P. ........................................................................... 18, 19

## **OTHER AUTHORITIES**

1A Sutherland Statutory Construction § 23:9 (7th ed.) ..........................................26

Alane A. Becket & William A. McNeal, *A Claimant's Dilemma: The Statute of Limitations and Proofs of Claim*, Am. Bankr. Inst. J., April 2015....................14

## STATEMENT OF THE ISSUE

According to Johnson, "[t]his case asks whether conduct that violates the FDCPA is exempt from FDCPA liability because the conduct occurred in a Chapter 13 bankruptcy." (Appellant's Br., at 6). But Midland did not argue, and the district court did not hold, that the FDCPA has no application in bankruptcy cases, as that question suggests. Thus, this case actually presents a different question:

> Whether an irreconcilable conflict exists between the FDCPA and the Bankruptcy Code to the extent that the FDCPA would prohibit a creditor from filing an accurate proof of claim based merely on the expiration of the applicable statute of limitations.

As the district court explained, because Alabama law provides that Midland had a right to payment of Johnson's debt even after the statute of limitations expired, Midland, as a creditor under the Bankruptcy Code, had the express right to file its proof of claim in Johnson's Chapter 13 bankruptcy case. On the other hand, the FDCPA (as construed by this Court in *Crawford*)[3] would prohibit Midland from filing its proof of claim. Therefore, the district court correctly concluded that the FDCPA and the Bankruptcy Code are in irreconcilable conflict to the extent that the FDCPA would prohibit Midland from exercising its rights under the Bankruptcy Code. And as the earlier-enacted statute, the FDCPA "must give way to the Code." (Doc. 28, at 15).

---

[3] *Crawford* v. *LVNV Funding, LLC*, 758 F.3d 1254 (11th Cir. 2014).

1

## SUMMARY OF THE ARGUMENT

As this Court has stated, "[c]ourts must first 'assiduously attempt' to try to construe two statutes in harmony before concluding that one impliedly repeals the other."[4] Here, the district court concluded that Johnson's purported FDCPA claim, based solely on the fact that Midland filed an out-of-statute proof of claim, cannot be reconciled with the fact that Midland was entitled to file its claim under the plain language of the Bankruptcy Code. Because "[a] clearer demonstration of irreconcilable conflict would be difficult to imagine," the district court was right to conclude that the Bankruptcy Code, as the later-enacted statute, impliedly repealed the FDCPA to the extent that it would otherwise prohibit Midland from filing its proof of claim. "That issue was not presented in *Crawford,* and [this Court] expressly declined to consider it."[5]

On appeal, Johnson tries to avoid the fact that her claim unambiguously and unavoidably conflicts with Midland's right under the Bankruptcy Code by contending that both the FDCPA *and* the Code prohibit Midland from filing a claim for a stale debt. According to the plain language of the Bankruptcy Code,

---

[4] *Miccosukee Tribe of Indians of Florida v. U.S. Army Corps of Engineers*, 619 F.3d 1289, 1299 (11th Cir. 2010) (citation omitted).

[5] (Doc. 28, at 2) (citing *Crawford*, 758 F.3d at 1262 n.7 (declining to consider "[w]hether the [Bankruptcy] Code 'preempts' the FDCPA when creditors misbehave in bankruptcy")); *see Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170, 125 S. Ct. 577, 586 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (quotation omitted).

2

however, "if a creditor has a right to payment he has a claim, and if he has a claim he is entitled to file a proof of claim."[6] Meanwhile, Johnson cannot cite to a single provision of the Code that forbids the filing of a proof of claim for a debt that would be time-barred if sued upon in state court.

Nonetheless, Johnson advocates for a restrictive interpretation of what constitutes a "right to payment" and, by extension, a "claim," to exclude claims that would be time-barred under state law. However, Johnson's interpretation runs counter to both the plain language of the Code as well as Congress's express intention for its definition of "claim" to be interpreted in the "broadest possible" terms.

Indeed, therein lies the irreconcilable conflict between the Bankruptcy Code and Johnson's claim under the FDCPA: "the Bankruptcy Code and applicable jurisprudence allow a creditor to file a proof of claim on a debt even though it may be later determined to be 'unenforceable'";[7] yet, according to this Court's decision in *Crawford*, creditors under the Code who are also debt collectors under the FDCPA are prohibited from filing out-of-statute proofs of claims. "Those two requirements cannot live in the same place."[8] "One statutory scheme allows all

---

[6] (Doc. 28, at 3) (citing 11 U.S.C. § 101(5)(A)).

[7] *B-Real, LLC v. Rogers*, 405 B.R. 428, 432 (M.D. La. 2009).

[8] *Townsend v. Quantum3 Grp., LLC*, No. 14-CV-1301, 2015 WL 4603410, at *12 (M.D. Fla. July 29, 2015) (finding an irreconcilable conflict between the FDCPA and the Bankruptcy

proofs of claim; the other does not." *Id.* Stated differently, "[t]he FDCPA seeks to engraft a requirement onto the Bankruptcy Code that Congress importantly omitted." *Id.* "In doing so, the FDCPA seeks to encroach on a creditor's absolute right to file a proof of claim." *Id.* Therefore, "in this specific factual situation, application of the FDCPA is precluded by the Bankruptcy Code."[9]

And while Johnson may feign at the consequences of exempting debt collectors from compliance with the FDCPA within the realm of bankruptcy, there is nothing of the sort at stake in this case. In fact, as Johnson suggests, the district court rightly used "a scalpel, not a sledgehammer," in finding that the FDCPA must give way to the Code only to the extent that the two statutes irreconcilably conflict.[10] In other words, while Johnson suggests that "[t]his case asks whether conduct that violates the FDCPA is exempt from FDCPA liability because the conduct occurred in a Chapter 13 bankruptcy,"[11] as noted above, this case actually presents a much different (and much narrower) question—that is, whether an irreconcilable conflict exists between the FDCPA and the Bankruptcy Code to the extent an accurate proof of claim would otherwise be actionable under the FDCPA based merely on the expiration of the applicable statute of limitations.

Code to the extent the former would require creditors under the Code who are also debt collectors under the FDCPA to register as a debt collector under applicable state law).

[9] *B-Real*, 405 B.R. at 434 (quotation omitted).

[10] *See* (Appellant's Br., at 49–50).

[11] (Appellant's Br., at 6).

As the district court concluded, Johnson's purported FDCPA claim, based solely on Midland's out-of-statute proof of claim, irreconcilably conflicts with Midland's "right to payment of its time-barred debt and a consequent *entitlement* to file a proof of claim."[12] At least insofar as both statutes ostensibly apply "to creditors under the Code that are also debt collectors under the Act," the FDCPA's "contradictory provisions cannot possibly be given effect simultaneously" with the rights conferred by the Code. (*Id.* at 15). Indeed, "[a] clearer demonstration of irreconcilable conflict would be difficult to imagine." (*Id.* at 13).

Accordingly, this Court should affirm the district court's conclusion: that Johnson's FDCPA claim fails as a matter of law because it irreconcilably conflicts with Midland's *right* under the Bankruptcy Code to file a proof of claim, even for a debt known to be time-barred under state law. And in the face of this irreconcilable conflict, "the Act must yield to the Code."[13]

---

[12] (Doc. 28, at 4) (emphasis added).

[13] (Doc. 28, at 11) ("The [FDCPA] has not been amended in any relevant respect since its 1977 enactment, while the Code dates from no earlier than 1978."); *Posadas v. Nat'l City Bank of New York,* 296 U.S. 497, 503, 56 S. Ct. 349, 352 (1936) ("Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one . . . .").

## ARGUMENT AND CITATIONS OF AUTHORITY

I.    **Midland was entitled under the Bankruptcy Code to file its proof of claim for Johnson's debt because it retained a right to payment despite the lapse of the limitations period.**

As the district court explained, "if a creditor has a right to payment he has a claim, and if he has a claim he is entitled to file a proof of claim." (Doc. 28, at 3). More specifically, the Bankruptcy Code "provides that it is permissible for a creditor to file [an out-of-statute] proof of claim if expiration of the limitations period does not extinguish the creditor's right to payment under applicable state law." (*Id.*). "In Alabama, a creditor's right to payment is not eliminated by a limitations bar." (*Id.* at 4).[14] Thus, even though the statute of limitations on its claim had expired by the time it filed its proof of claim, Midland still retained a "right to payment" of Johnson's debt. And because it "[had] a right to payment of its time-barred debt," Midland also had "a consequent entitlement to file a proof of claim as to the time-barred debt." (Doc. 28, at 4). Accordingly, this Court should reject Johnson's attempt to avoid the irreconcilable conflict between her FDCPA claim and the Bankruptcy Code by suggesting that Midland was not entitled under the Code to file its proof of claim.

---

[14] *See Ex parte Liberty Nat'l Life Ins. Co.*, 825 So. 2d 758, 765 (Ala. 2007) ("When the statute of limitations expires, . . . [it] extinguishes the remedy rather than ***the right***.") (emphasis added; quotation omitted); *see also Ex parte HealthSouth Corp.*, 974 So. 2d 288, 296 (Ala. 2007) ("When the statute of limitations expires, it does not extinguish the cause of action; instead, it makes the remedy unavailable.").

**A.      The plain language of the Bankruptcy Code provides that Midland had a right to file its proof of claim.**

To determine whether Midland had a right under the Code to file its proof of claim for Johnson's debt, the Court's analysis "begin[s] where all such inquiries must begin: with the language of the statute itself." *Crawford*, 758 F.3d at 1258 (quoting *Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1216 (11th Cir. 2012)). And here, "Congress chose expansive language in both definitions relevant to this case." *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558, 110 S. Ct. 2126, 2130 (1990).

The Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim," 11 U.S.C. § 501(a), and defines a "claim" as a "right to payment," *id.* at § 101(5)(A). "[T]o the extent the phrase 'right to payment' is modified in the statute, the modifying language ('whether or not such right is [reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured]') reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a 'claim' giving rise to a 'debt,'" for which a creditor may file a proof of claim. *Id.*

Indeed, Congress intended for a "claim" to be defined in the "broadest possible" manner, and for the term to include "all legal obligations of the debtor." *Id.* (citations omitted). Accordingly, "numerous courts have upheld ***the right*** of an entity to file a proof of claim, even if that claim is clearly barred by the applicable

7

statute of limitations," because "Congress established that the existence of *a right to payment* is more extensive than the existence of *a cause of action* that entitles an entity to bring suit." *In re Keeler*, 440 B.R. 354, 362–63 (Bankr. E.D. Pa. 2009) (citation omitted; emphases added). Therefore, according to the plain language of the Bankruptcy Code, Midland was entitled to file its proof of claim for Johnson's debt because it retained a "right to payment" under Alabama law, regardless of whether the statute of limitations had expired.

**B.    A "right to payment" need not be enforceable for a creditor to file a proof of claim.**

As this Court has acknowledged, "the Bankruptcy Code explicitly contemplates that creditors may file unenforceable claims in the bankruptcy court." *In re McLean*, 794 F.3d 1313, 1321 (11th Cir. 2015). Indeed, the claims-allowance process under the Bankruptcy Code and Rules expressly anticipate that unenforceable claims will be filed, even though they may later be disallowed. Furthermore, the "broadest possible" definition of "claim" necessarily includes rights to payment that are subject to a limitations defense under applicable state law. Accordingly, this Court should reject Johnson's invitation to deviate from the plain language of the Bankruptcy Code.

8

### 1.    A bankruptcy creditor's "right to payment" necessarily is broader than a claim that is "enforceable" in state court.

Eschewing its plain language, Johnson would have this Court rewrite § 101(5)(A) to define a "claim" as including only a "right to payment" that is "legally enforceable in state court civil proceedings." As she would have it, a creditor does not have a "right to payment" for a debt that would be time-barred under state law, because "only legally 'enforceable' claims are authorized under 11 U.S.C. § 101(5)(A), and stale claims are *not* legally 'enforceable.'" (Appellant's Br., at 19–20) (emphasis in original; citations omitted).

However, in *Davenport*—the very case Johnson relies on for her suggestion that this Court should restrict Congress's broad definition of the term "claim"—the Supreme Court actually rejected the petitioner's argument for a narrow construction that would have excluded restitution obligations imposed in state criminal proceedings. Much like Johnson, the petitioner in *Davenport* argued that restitution obligations should not count as "claims" in part because neither the state nor the victim may enforce restitution obligations in civil proceedings. *See Davenport*, 495 U.S. at 559, 110 S. Ct. at 2131. But as the Court explained, "the language employed to define 'claim' in [the Code] makes no reference to" a creditor's "method of enforcing" its right to payment. *Id.* To the contrary, the plain language of the statute defines a "claim" as a "right to payment," which means "nothing more nor less than an enforceable obligation," regardless of whether the

9

right to payment "is secured by the debtor's freedom rather than his property." *Davenport*, 495 U.S. at 559–60, 110 S. Ct. at 2131. "Accordingly, [the Court did] not regard the . . . enforcement mechanism of restitution orders as placing such orders outside the scope of § 101([5])(A)." *Id.* at 560, 110 S. Ct. at 2131.

Like the restitution orders at issue in *Davenport*, just because Midland may not be able to enforce its claim in state court civil proceedings after the expiration of the limitations period does not mean that its right to payment of Johnson's debt falls outside the ambit of § 101(5)(A). As the district court explained, the Supreme Court's "statement [in *Davenport*] that a right to payment is 'nothing more nor less than an enforceable obligation' signifies only that a right to payment is legally enforceable however the law chooses to enforce it—by civil litigation or otherwise." (Doc. 28, at 6). "So long as the law recognizes and protects the interest at issue (here, the interest in being repaid a contractual debt), the resulting claim is legally enforceable even if the law's protection is not limitless in time or scope." (*Id.*).

Again, under Alabama law, the expiration of the statute of limitations does not extinguish the debt, or, more importantly, Midland's "right to payment"; rather, it merely extinguishes the remedy (in this case, enforcement of the debt by means of "civil litigation"). In other words, Midland's "right is 'legally enforceable' . . . whether or not [Johnson] can successfully assert an affirmative defense such as the

statute of limitations." (Doc. 28, at 5–6). On the other hand, "to read *Davenport* as [Johnson] desires"—that is, to interpret a "right to payment" under the Code as being something less than the "right to payment" recognized by Alabama law— would directly contradict [the Supreme Court's] pronouncement that the parameters of a right to payment are defined by state law, not federal law." (*Id.* at 6–7). "In short, *Davenport* cannot plausibly be read for the proposition that a 'right to payment' as contemplated by Section 101(5) ceases to exist the moment the statute of limitations expires." (*Id.* at 7).[15]

For that reason, creditors who may be barred from enforcing their claims in state courts "are no less creditors under the Code." *In re Charter Co.*, 876 F.2d 866, 871 (11th Cir. 1989). Congress's stated intention in providing the term "claim" with the "broadest possible definition" was that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy court." *Id.* at 870. As this Court explained, "[t]he 1978 revision of the

---

[15] "Nor do later Supreme Court cases quoting *Davenport's* 'enforceable obligation' language support such a proposition." (Doc. 28, at 8 n.9); *compare* (Appellant's Br., at 19) (citing *FCC* v. *NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 303, 123 S. Ct. 832, 839 (2003); *Cohen* v. *de la Cruz*, 523 U.S. 213, 218, 118 S. Ct. 1212, 1216 (1998); *Johnson* v. *Home State Bank*, 501 U.S. 78, 83-84, 111 S. Ct. 2150, 2154 (1991)), *with* (Doc. 28, at 8 n.9) ("*NextWave* quoted *Davenport* only to support its conclusion that 'a debt is a debt, even when the obligation to pay it is also a regulatory condition.' *Cohen* quoted *Davenport* only to support its conclusion that 'an award of treble damages is an "enforceable obligation" of the debtor, and the creditor has a corresponding "right to payment."' *Johnson* quoted *Davenport* only to support its conclusion that 'a mortgage interest that survives the discharge of a debtor's personal liability is a "claim" within the terms of § 101(5).'") (citations and alterations omitted).

statute expanded the definition of a claim," which "evinces a congressional intent to open bankruptcy proceedings to the widest possible range of 'players.'" *Id.* Accordingly, this Court held that the Code's definition of "claim" includes class proofs of claim, even though such claims are not expressly permitted under the Code, and despite the fact that "the legislative history is silent on the specific issue." *Id.*

Just as this Court reasoned in *In re Charter* with respect to class proofs of claim, an interpretation of the Code's definition of "claim" that includes a right to payment that is subject to a limitations defense in state court likewise "will bring all claims forward, as contemplated by the Bankruptcy Code." *In re Charter Co.*, 876 F.2d at 871. On the other hand, "[t]he consequence of" adopting Johnson's restrictive reading "would be to read out of the broad definition of claim the debtor's obligations" to creditors holding out-of-statute claims. *Id.* And an interpretation of the "term 'right to payment' that excludes obligations exposed to a limitations defense patently is not the broadest possible." (Doc. 28, at 6).

In sum, commensurate with Congress's intent, the filing of a proof of claim—even for a stale debt—furthers the purposes of the Bankruptcy Code by affording debtors the benefit of discharging *all* of their debts, and by providing creditors with a means of seeking satisfaction of *all* of their claims. On the other hand, if the Court were to constrict Congress's definition by carving out stale debts

from the ambit of "claims" that are administrable before the bankruptcy court, then such debts would not be discharged, and creditors holding such claims would not be permitted to share in the distribution of the debtor's bankruptcy estate. Therefore, the Court should reject Johnson's suggestion that the Bankruptcy Code's definition of "claim" excludes any "right to payment" that would be subject to a limitations defense in state court civil proceedings.

> **2.    The structure and purpose of the claims-allowance process under the Bankruptcy Code and Rules authorize the filing of unenforceable claims.**

"[T]he Bankruptcy Code explicitly contemplates that creditors may file unenforceable claims in the bankruptcy court." *In re McLean*, 794 F.3d at 1321. Nevertheless, Johnson argues that the Code's provision for disallowing claims for debts that would be "unenforceable" in state civil proceedings means that creditors actually are *forbidden* from filing proofs of claim for debts outside of the statute of limitations.

To the contrary, if anything, the fact that the Code contemplates that such claims will be filed is evidence that they are not prohibited. For instance, Rule 3001(c) specifies the type of information that a proof of claim must contain, including the last payment date, last transaction date, and charge-off date. As the Advisory Committee Notes state, these disclosure requirements are expressly designed to "provide a basis for assessing the timeliness of the claim," Fed. R.

Bankr. P. 3001, Advisory Comm. Cmts ("Disclosure of the information required by paragraph (3) will assist the debtor in associating the claim with a known account. *It will also provide a basis for assessing the timeliness of the claim.*") (emphasis added). "Clearly, the drafters of the Federal Bankruptcy Rules were aware that out-of-statute claims are routinely filed, and crafted provisions to add transparency to those claims." Alane A. Becket & William A. McNeal, *A Claimant's Dilemma: The Statute of Limitations and Proofs of Claim*, Am. Bankr. Inst. J., April 2015, at 50, 104.

Thus, the only way to make sense of a scheme which provides that claims may be filed, yet later disallowed (only upon objection), is to conclude that the Code does not *prohibit* the filing of claims simply because they may later be deemed unenforceable. To conclude otherwise "would lead to nonsensical results." *Brock v. Resurgent Capital Servs., LP*, No. 14-CV-0324-WS-M, 2015 WL 4985700, at *2 (S.D. Ala. Aug. 20, 2015). For example, Johnson maintains that "the notion that parties have a 'right' to file stale claims is directly at odds with the trustee's duty to *object* to stale claims," and, so she insists, "[t]here is no reason to think that Congress embraced the pointless exercise of authorizing creditors to file a time-barred claim so the trustee could immediately object to that time-barred claim." (Appellant's Br., at 21) (citing 11 U.S.C. §§ 704(a)(5), 1302(b)(1)).

14

However, if Johnson were correct that "a right to payment means an obligation *enforceable in Bankruptcy Court*, then a claim (which is defined as a right to payment) also is limited to an obligation *enforceable in Bankruptcy Court*." *Brock*, 2015 WL 4985700, at *2 (emphases added). "What then to make of Section 502(b)(1)"? *Id.* Under § 502, a creditor's claim is allowed if not objected to, and one of the enumerated grounds for objection include that the "claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). "Since one ground of unenforceability is the expiration of the limitations period, the Code clearly contemplates the filing of proofs of claim on claims barred by the statute of limitations, with such claims to be allowed without objection or disallowed upon objection." (Doc. 28, at 8); *see also In re McLean*, 794 F.3d at 1321 (citing § 502(b)(1) as "recognizing that claims may be invalid 'under [an] agreement or applicable law for a reason other than because such claim is contingent or unmatured' and authorizing a debtor's objection to a proof of claim on that basis").

On the other hand, if Johnson's interpretation were correct, then "the Code provides that a creditor's enforceable obligation is to be allowed unless it is not an enforceable obligation." *Brock*, 2015 WL 4985700, at *2. In other words, Johnson's argument assumes what she is trying to prove: that the Code does not permit the *filing* of a proof of claim for an unenforceable obligation, because a

15

proof of claim may be *disallowed* if the obligation is unenforceable. In reality, however, the Bankruptcy Code and Rules clearly contemplate that "the existence of the claim must be determined independent of limitations questions else the process of *allowance* under § 502 becomes redundant if not circular." *In re Edge*, 60 B.R. 690, 699 (Bankr. M.D. Tenn. 1986) (emphasis in original); *see id.* ("If a limitation has expired, the underlying claim, though cognizable in bankruptcy, may not be *allowable*. . . . That a claim is not *allowable* because a statute of limitation has expired does not defeat the *existence* of the claim in bankruptcy.").[16]

Nonetheless, Johnson points to the supposed irrationality inherent in concluding that Congress intended to allow creditors to file "patently invalid" proofs of claim, only to provide that such claims may be disallowed upon the objection of the debtor or the trustee. (Appellant's Br., at 24). Johnson complains

---

[16] *See also B-Real*, 405 B.R. at 432 ("[T]he Bankruptcy Code and applicable jurisprudence allow a creditor to file a proof of claim on a debt even though it may be later determined to be 'unenforceable' . . . because the debt is determined to be time-barred or prescribed."); *In re Mazyck*, 521 B.R. 726, 730 (Bankr. D.S.C. 2014) ("When applicable, the bar of a statute of limitation does not extinguish a creditor's underlying right to payment, but it does cause the remedy—*enforcement* of the right to payment—to be withheld.") (emphasis in original); *In re Nussman,* 501 B.R. 297, 302 (Bankr. E.D.N.C. 2013) ("[A]lthough a creditor may have a right to payment, it cannot seek to enforce that right once the statute of limitations has run; thus, if a time-barred claim is filed in a bankruptcy case, it is subject to disallowance on grounds of unenforceability pursuant to § 502(b)(1)...."); *In re Claudio*, 463 B.R. 190, 195 (Bankr. D. Mass. 2012) ("The Debtor . . . contends LVNV's claims are invalid and unenforceable because the debts upon which they are based are stale. They may be unenforceable, but they are not invalid."); *In re Williams*, 392 B.R. 882, 886 (Bankr. M.D. Fla. 2008) ("The creditor's right to file a claim is not impacted by whether the statute of limitations had run, as the debtor must raise the statute of limitations issue as an affirmative defense, and even then the court still must determine whether it has tolled and run."); *In re Varona*, 388 B.R. 705, 724 (Bankr. E.D. Va. 2008) ("The plain language of Section 502(a) permits a creditor to file a claim that is invalid on its face but that is deemed valid unless an interested party objects.").

that such a practice "'wastes limited judicial and party resources with no offsetting public benefit' or 'societal value,'"[17] and asks why "Congress would endorse such a 'pointless exercise,' which is endlessly repeated in countless cases . . . and which results either in wasted time or (if a stale claim slips through) in 'divert[ing] funds from honest creditors'?" *Brock*, 2015 WL 4985700, at *2.

As the district court explained in *Brock*,[18] however, "[t]he question is a good one, but it is the wrong one." *Id.* "The issue before the Court is not how Congress might have crafted the Code in 1978 had it foreseen developments in debt collection that occurred several decades later. Rather, the issue is what Congress in fact provided in the Code." *Id.* As explained above, the Code and Rules clearly

---

[17] Even assuming for the sake of argument that Johnson is right that there is no redeeming value in allowing objectionable proofs of claim to be filed in the first place, it is not so clear that the "burden" of objecting to such claims is as weighty as Johnson makes it out to be. *See* (Appellant's Br., at 28–29) ("The aggregate cost to the system is staggering: this imposes countless hours of attorney time and court expense in addressing stale claims."). As explained by one bankruptcy court:

> Certainly it is something of a burden to object to creditor's proofs of claim, but why would it be an unfair burden? Debtors in chapter 13 voluntarily file their cases, submitting themselves to an adjustment of their debts. A part of this voluntary process necessarily involves them in a claims analysis, making any argument by a debtor that is burdensome for the debtor to examine proofs of claims a hollow one.

*Carranza v. Midland Funding, LLC*, No. 15-CV-559, 2015 WL 5008462, at *7 (E.D. Mo. Aug. 20, 2015) (quoting *In re Yancey*, 301 B.R. 861, 870 (Bankr. W.D. Tenn. 2003)) (alterations omitted). Indeed, "an objection is a relatively simple pleading," and "[t]here is nothing to indicate that the proofs of claim in this or other chapter 13 cases in this district are difficult to see or review." *Id.* (quotations omitted). A cursory review of the docket in any given Chapter 13 case reveals that "[t]he bankruptcy court [can] summarily dispose[] of [a debtor's] objection without apparent complication, undue delay or expense." *Id.*

[18] The district court in *Brock* considered and rejected the exact same arguments that Johnson, represented by the same counsel, makes on appeal. In fact, the *Brock* court's quotations from the plaintiff's brief are also found verbatim in Johnson's opening brief on appeal.

contemplate that time-barred proofs of claim may be filed, even if they are subject to disallowance upon objection. "That the congressional solution may in retrospect appear inadequate furnishes no grounds for judicially changing that legislative solution." *Id.*[19]

### C.    Stale proofs of claim are not sanctionable or otherwise forbidden, especially since there are reasons why a debtor may actually *want* such claims to be filed.

In addition to ignoring the plain language of the Code, clear congressional intent, and the entire purpose and structure of the bankruptcy claims-allowance process, Johnson also urges the Court to conclude that the Code prohibits creditors from filing out-of-statute proofs of claim because such conduct is purportedly sanctionable under the Bankruptcy Rules. Again like the plaintiff in *Brock*, Johnson "point[s] to a recent decision imposing monetary sanctions against creditors filing proofs of claim on patently time-barred debt, as conduct violating Rule 9011," and suggests that this "proves that the practice is 'forbidden under the Code.'" *Brock*, 2015 WL 4985700, at *2 (quoting *In re Sekema,* 523 B.R. 651 (Bankr. N.D. Ind. 2015)) (internal quotation and alteration omitted). However,

---

[19] Indeed, though "the bankruptcy claims filing and objection process operates in a manner that is somewhat counterintuitive as compared to normal civil litigation . . ., to the extent a measure of unorthodoxy exists it is only a reflection of the legislative policy choices embedded in Section 502(b) and the relevant Bankruptcy Rules." *In re Herron*, 381 B.R. 184, 191 (Bankr. D. Md. 2008). "Properly filed claims in bankruptcy are elevated to an impressive level of potency out of respect for the system's demands for efficient, expedient, low-cost operation." *Id.* "Nevertheless, an objector is allowed every legitimate opportunity to seek disallowance of the particular claim. It is simply incumbent upon the objector to make out a viable case in support of the objection in the first instance in order to be in a position to prevail." *Id.*

there are at least three reasons why Johnson should look before she leaps from the proposition that just because a *single court* has imposed sanctions upon a creditor for filing a time-barred proof of claim,[20] this Court should conclude that the practice is "forbidden under the Code."

First, "Rule 9011 is not part of the Code but a non-statutory adjunct to it." *Id.* Thus, while "Rule 9011 (especially if it becomes routinely invoked, as in *In re Sekema*) may temper the eagerness of creditors to file proofs of claim on debts known to be stale, . . . it does not alter the Code's statutory permission to file such proofs of claim." *Id.*

Second, implicit in Johnson's reasoning is her assumption that a time-barred proof of claim is necessarily "baseless" or "frivolous." However, there are plenty of reasons why an ostensibly time-barred proof of claim might prove much more defensible than Johnson assumes. For example, though it may appear stale on its face, the proof of claim might actually prove to be timely, because the debtor made a voluntary payment which restarted the limitations period,[21] because the statute of

---

[20] While Johnson insinuates that courts "routinely" sanction creditors for filing time-barred proofs of claim (*see* Appellant's Brief, at 8), she actually cites only one case where the court imposed sanctions under Rule 9011 on that basis (*id.* at 21). Independent research likewise reveals no other decisions to support Johnson's suggestion. *See Brock*, 2015 WL 4985700, at *2 n.1 ("The plaintiffs cite other cases, but they involve either Rule 11 in the limitations context or Rule 9011 in a non-limitations context. Only *In re Sekema* involves Rule 9011 in a limitations context.").

[21] *In re Bunch*, No. 14-80864-JAC-13, 2014 WL 6661692, at *2 (Bankr. N.D. Ala. Oct. 8, 2014) ("[T]he statute of limitations was revived on September 25, 2009, the date of debtor's last payment. Therefore, Asset Acceptance's proof of claim filed on April 8, 2014 was filed well

19

limitations was tolled based on the debtor's previous intervening bankruptcy filings,[22] or because the proof of claim actually evidences a default judgment rather than merely a defaulted credit card debt.[23] In any of those cases, the creditor's proof of claim not only would not give rise to sanctions, it would be allowed over the debtor's objection.

Third, with the exception of *In re Sekema*, the great weight of authority indicates that courts are loathe to impose sanctions based on stale proof of claim, primarily for the very reason that Johnson attempts to assume way: that creditors have a right to payment which survives the lapse of the statute of limitations. Indeed, "[t]he appropriate standard for judgment of whether sanctions should be imposed in the bankruptcy claim process is whether the proof of claim is 'false or fraudulent,' reflecting the essence of the purpose of the bankruptcy code to assemble and validate claims against a debtor's estate." *See In re Chaussee*, 399 B.R. 225, 244 (B.A.P. 9th Cir. 2008)) (quotation and alteration omitted). However, a claim is not rendered "false or fraudulent" merely based on the expiration of the statute of limitations. "[W]hile collection of the claims is arguably time-barred, under [state] law the debts continue to exist," and so a creditor's "claims are not

---

within the applicable six-year statute of limitations. Asset Acceptance did not file a time-barred proof of claim.").

   [22] *See* 11 U.S.C. § 108(c).

   [23] *See, e.g.*, Ala. Code § 6-2-32 (providing a 20-year statute of limitations for actions to enforce judgments).

extinguished." *In re Varona*, 388 B.R. 705, 723 (Bankr. E.D. Va. 2008). "As such, asserting [such] claims in the bankruptcy [court] does not render the claims either 'false' or 'fraudulent,' and the imposition of sanctions is not appropriate" simply because a creditor files a proof of claim for a debt that would be unenforceable under state law. *Id.* at 723–24. This is particularly true where, as here, creditors' proofs of claim "facially indicate the circumstances under which they were incurred," and "there is no attempt to obfuscate the timing of their incurrence so as to mask the potential bar of time." *Id.* at 723.

Therefore, even if Johnson were right that creditors open themselves up to sanctions merely by filing a proof of claim for a time-barred debt, she is wrong to suggest that the possibility of sanctions under the Rules means that such conduct is prohibited by the Code. In fact, the fact that an unenforceable proof of claim may be disallowed only upon objection furnishes an additional, practical reason why this Court should reject Johnson's suggestion that the Code prohibits creditors from filing time-barred proofs of claim in the first instance—that is, some debtors may actually *want* a proof of claim to be filed (and allowed) for a stale debt.

For example, if Johnson had failed to schedule her debt to Midland (and assuming that Midland did not receive notice of her bankruptcy), then her debt to

21

Midland would not have been discharged.[24] As a result, despite it being time-barred under state law, Midland still could have sought voluntary repayment of the debt after the conclusion of her bankruptcy case, notwithstanding the bankruptcy court's discharge injunction, and without running afoul of the FDCPA.[25]

On the other hand, because §§ 501(b) and (c) allow the debtor, the trustee, or a co-obligor to file a proof of claim on a creditor's behalf, Johnson's debt to Midland still could be discharged even if she neglected to list it on her bankruptcy schedules, and even if Midland had failed to timely file its proof of claim. For example, if a creditor's claim would be exempt from discharge, then the debtor has an incentive to file a proof of claim so that the creditor may receive a share of the distributions from the bankruptcy estate, thereby reducing the balance that would be owed after bankruptcy. Likewise, a co-obligor may wish to file a proof of claim so that the debt either would be reduced to the extent that a creditor's claim is paid from the bankruptcy estate, or extinguished in its entirety if the claim is either discharged or disallowed. Indeed, because the Code's discharge injunction extends

---

[24] *See* 11 U.S.C. §§ 1328(c)(2) & 523(a)(3); *see also In re Raines*, 183 B.R. 299, 301 (Bankr. M.D. Fla. 1995) ("Section 523(a)(3)(B) is quite clear: [in order for an unscheduled debt to be discharged] the creditor must either have notice of the bankruptcy or have actual knowledge of the bankruptcy in time to permit timely filing of a proof of claim.").

[25] *See Hinkle v. Northland Grp. Inc.*, No. 11-CV-084, 2011 WL 6748504 (S.D. Ga. Nov. 22, 2011) ("[T]he mere existence of [a] time-barred debt combined with some communication from a debt collector regarding the debt is insufficient to establish an FDCPA violation."). In fact, even "when a party attempts to collect a debt *discharged in bankruptcy*, that party has not violated § 1692f of the FDCPA by engaging in unfair and unconscionable collection practices." *Rios v. Bakalar & Associates, P.A.*, 795 F. Supp. 2d 1368, 1369 (S.D. Fla. 2011) (emphasis added).

to claims that are *disallowed*, a debtor or co-obligor may actually *want* a proof of claim to be filed for a stale debt *for the express purpose of objecting to the claim* on the basis that it is unenforceable. In that case, the debt would be discharged, and Midland would not retain the right to seek voluntary repayment of the debt after Johnson's bankruptcy.

Thus, while Johnson argues that "Midland's only hope [in filing its proof of claim] was that the debtor may unwittingly 'fail to object' and the trustee may 'fail to fulfill its statutory duty to object to improper claims,'"[26] the Bankruptcy Code clearly contemplates otherwise. The "considered Congressional policy that underlies the Bankruptcy Code as a whole . . . [is to] provid[e] the bankrupt a fresh start, while simultaneously according fair treatment to creditors by paying ascertainable claims as quickly as possible." *In re Charter Co.*, 862 F.2d 1500, 1502 (11th Cir. 1989). Because the Code and Rules expressly contemplate that stale proofs of claim may be filed, yet later disallowed, this Court should reject Johnson's argument that the Code itself prohibits them from being filed in the first place. A contrary conclusion that would prohibit creditors from filing proofs of claim not only would restrict the "possible range of 'players'" who may bring their

---

[26] (Appellant's Br., at 18–19) (citing *Crawford*, 758 F.3d at 1259 n. 5, 1261); *see also In re Feggins*, No. 13-11319-WRS, 2015 WL 5011224, at *5 (Bankr. M.D. Ala. Aug. 24, 2015) ("It follows that a creditor's only possible purpose in filing a facially time-barred proof of claim is to take advantage of the automatic claims allowance process of § 502(a) and hope that the debtor and the bankruptcy court do not notice the defect.").

23

claims before the bankruptcy court, it also would preclude debtors like Johnson from getting their "fresh start" by obtaining a discharge of "*all* legal obligations," including those that cannot be reduced to judgment in state courts. *See In re Charter Co.*, 876 F.2d at 871.

Under the plain language of the Code, Midland had a right to payment of Johnson's debt under Alabama law, regardless of whether the statute of limitations had expired. Therefore, Midland also had the concomitant right under the Bankruptcy Code to file its proof of claim. Accordingly, this Court should reject Johnson's argument that the Bankruptcy Code prohibited Midland from doing that which it expressly allows.

## II.     Johnson's claim presents an irreconcilable conflict between the FDCPA and the Code, because the FDCPA would prohibit creditors from exercising their rights under the Bankruptcy Code.

For the reasons explained above, Johnson cannot avoid the irreconcilable conflict between the FDCPA and the Bankruptcy Code by arguing that both statutes would prevent Midland from filing its proof of claim. Instead, the plain language, legislative history, structure, and purpose of the Code all lead to the inexorable conclusion that creditors with out-of-statute claims "are no less creditors under the Code." *In re Charter Co.*, 876 F.2d at 871. And as a creditor under the Code, Midland's right to payment of Johnson's debt (and right to file its proof of claim) was not extinguished by the expiration of the statute of limitations.

Meanwhile, under this Court's decision in *Crawford*, the FDCPA would prohibit Midland from exercising its right under the Bankruptcy Code to file a proof of claim. Thus, Johnson's claim presents the precise conflict between the FDCPA and the Bankruptcy Code that this Court expressly "decline[d] to weigh in on." *Crawford*, 758 F.3d at 1262 n.7. In fact, it was this Court's decision in *Crawford* that required the district court in this case to attempt to reconcile a situation whereby conduct expressly *permitted* by the Bankruptcy Code is also *proscribed* by the FDCPA.

As the district court concluded, a purported FDCPA claim based solely on a creditor's proof of claim for a time-barred debt irreconcilably conflicts with a creditor's "right to payment of its time-barred debt[s] and a consequent *entitlement* to file a proof of claim as to the time-barred debt[s]." (Doc. 28, at 4) (emphasis added). At least "as to creditors under the Code that are also debt collectors under the Act, those contradictory provisions cannot possibly be given effect simultaneously, the provisions are positively repugnant and cannot mutually coexist. They are thus in irreconcilable conflict. And because there is irreconcilable conflict, the Act must give way to the Code." (*Id.* at 15). Accordingly, this Court should affirm the district court's judgment dismissing Johnson's FDCPA claim.

25

### A.     The district court rightly concluded that Johnson's FDCPA claim irreconcilably conflicts with Midland's rights under the Bankruptcy Code.

Every federal court of appeals to address the issue has recognized that there are circumstances where, as here, the Bankruptcy Code trumps the FDCPA. *See Simon v. FIA Card Servs., N.A.*, 732 F.3d 259 (3d Cir. 2013); *Simmons v. Roundup Funding, LLC*, 622 F.3d 93 (2d Cir. 2010); *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004); *Walls v. Wells Fargo Bank*, 276 F.3d 502 (9th Cir. 2002). In *Walls* and *Simmons*, the Ninth and Second Circuits held that creditors categorically cannot be liable under the FDCPA based on conduct occurring in bankruptcy. In *Randolph* and *Simon*, on the other hand, the Seventh and Third Circuit courts of appeals correctly applied the test for determining whether one federal statute precludes or impliedly repeals another under specific circumstances.

As this Court has explained, "[a] statute effecting an implied repeal, also known as a repeal by implication or implicit repeal, does not identify the statute it is repealing." *Miccosukee Tribe*, 619 F.3d at 1299. Instead, "[w]hat is key is the legislature's demonstration of intent to repeal a pre-existing law." *Id.* (citing 1A Sutherland Statutory Construction § 23:9 (7th ed.) ("[T]he intent of the legislature is always of prime importance . . ., but where a conflict is readily seen by application of a later enactment in accord with that intent, the later enactment is intended to supersede existing law.")). Of course, "[t]he conclusion that two

26

statutes conflict . . . is one that courts must not reach lightly," and "[i]f any interpretation permits both statutes to stand, the court must adopt that interpretation, absent a clearly expressed congressional intention to the contrary." *Id.* (quotation omitted). That being said, however, "Congress's intent to effect an implied repeal can be inferred when a later statute conflicts with or is repugnant to an earlier statute," in which case "the later-enacted statute controls to the extent it conflicts with the earlier-enacted statute." *Id.*; *see also Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1225 (11th Cir. 2014) ("We may infer clear and manifest intent from the existence of an 'irreconcilable conflict.'").

Hence, "[t]he proper inquiry . . . is whether the FDCPA claim raises a direct conflict between the Code or Rules and the FDCPA, or whether both can be enforced." *Simon*, 732 F.3d at 274. In other words, "the question is not whether the FDCPA and the Bankruptcy Code can co-exist in a vacuum; rather, the question is whether filing a proof of claim on a prescribed debt (an action permitted by the Bankruptcy Code) can potentially constitute a violation of the FDCPA." *B-Real, LLC*, 405 B.R. at 431–32 (citing *Randolph*, 368 F.3d at 731). In *Crawford*, this Court held "in a vacuum" that a bankruptcy debtor may conceivably state a claim under the FDCPA based on a debt collector's filing of a time-barred proof of claim. Here, however, there exists an irreconcilable conflict between Johnson's FDCPA claim and the Bankruptcy Code, as the Code gives Midland the right to do

27

precisely that which the FDCPA would prohibit. Faced with this conflict, the Bankruptcy Code must control, and Johnson's FDCPA claim fails as a matter of law.

For example, applying the appropriate rubric of irreconcilable conflict, the Third Circuit concluded in *Simon* that two of the plaintiff's FDCPA claims were not precluded by the Bankruptcy Code because both claims were based on alleged violations of two different subpoena requirements—*e.g.*, failing to serve the subpoena directly on the subpoenaed individuals and failing to include the relevant text of Rule 45 and Bankruptcy Rule 9016. *Simon*, 732 F.3d at 279. Though "the bankruptcy court has other means to enforce compliance with the subpoena rules," the plaintiffs also alleged that the defendants' noncompliance violated the FDCPA, because § 1692e(5) prohibits a debt collector from making any "threat to take any action that cannot legally be taken or that is not intended to be taken," and because § 1692e(13) prohibits a debt collector from making a "false representation or implication that documents are legal process." *Id.* In that case, the *Simon* court found no "direct conflict" because "[a] creditor may comply" with both statutes by following the same rules. *Id.*

On the other hand, the Third Circuit concluded that the plaintiffs' third FDCPA claim "le[d] to a different result." *Simon*, 732 F.3d at 279. There, the plaintiffs claimed that the defendant debt collector had violated § 1692e(11) by

28

failing to disclose in its letters and subpoena to the debtors that those communications were sent by a debt collector, and that any information obtained would be used for the purpose of collecting a debt. *Id.* at 280. Yet, the Bankruptcy Code's automatic stay forbids "any act to collect assess, or recover a claim against the debtor that arose before the commencement" of the bankruptcy proceeding. *Id.* Thus, had the statutory disclosures been included, *as required by the FDCPA*, the debt collector would have violated the Bankruptcy Code's automatic stay. *Id.* Conversely, if the debt collector had opted instead to avoid running afoul of the automatic stay, *as required by the Bankruptcy Code*, then it would have violated the FDCPA, as the plaintiffs alleged.

Noting the Morton's fork faced by debt collectors placed in the precarious position of determining whether to comply with the FDCPA or the Bankruptcy Code, the Third Circuit held that "[t]his conflict precludes allowing a claim under § 1692e(11)." *Id.* In other words, the *Simon* court found that there was an irreconcilable conflict between the Bankruptcy Code, which required the defendant to abstain from any extra-bankruptcy attempts to collect a debt, and the FDCPA, which required the defendant to advise the plaintiffs that it was a debt collector and that its communication was an attempt to collect a debt. And in the face of the irreconcilable conflict between the two statutes, the Third Circuit held that the Bankruptcy Code must control.

29

In reaching its decision in *Simon*, the Third Circuit relied on a decision of the Ninth Circuit Bankruptcy Appellate Panel, in which that court addressed the very same issue raised by Johnson—whether the Bankruptcy Code precludes a plaintiff from asserting an FDCPA claim based on a proof of claim for a debt that would be time-barred under applicable state law. *See Simon*, 732 F.3d at 274 (citing *In re Chaussee*, 399 B.R. at 239). In *In re Chaussee*, the court reversed the bankruptcy court's denial of the defendant debt collector's motion to dismiss on preclusion grounds, concluding in no uncertain terms that "the provisions of both [the Bankruptcy Code and the FDCPA] cannot compatibly operate" in the context of actions based on a creditor's proof of claim in bankruptcy. *In re Chaussee*, 399 B.R. at 238. As the court explained, "[a]ttempting to reconcile the debt validation procedure contemplated by the FDCPA with the claims objection process under the Code results in the sort of confusion and conflict[] that persuades us that Congress intended that FDCPA [claims] be precluded in the context of bankruptcy cases." *Id.* at 239. Indeed, it is difficult to "understand how [a debt collector] could comply with [the] FDCPA . . . and its various notice and informational requirements because those provisions conflict with the Code and Rules." *Id.* at 238.[27]

---

[27] Although the *Chaussee* panel was obliged to follow the categorical approach of *Walls*, it concluded that an allegedly time-barred proof of claim also would be precluded even under the Seventh Circuit's claims-specific conflict analysis:

> Unlike in *Randolph*, where the debtor's claim against the creditor was based upon the creditor's actions taken after conclusion of the bankruptcy case, the purported

The same is true here. On one hand, "the Bankruptcy Code and applicable jurisprudence allow a creditor to file a proof of claim on a debt even though it may be later determined to be 'unenforceable'" based on the expiration of the applicable statute of limitations. *B-Real, LLC*, 405 B.R. at 432 (quotation omitted). On the other hand, the FDCPA, "as construed by *Crawford,* provides that it is unlawful for a debt collector to file a proof of claim in a Chapter 13 proceeding knowing the claim to be time-barred." (Doc. 28, at 3). At least insofar as both statutes are applied "to creditors under the Code that are also debt collectors under the Act, those contradictory provisions cannot possibly be given effect simultaneously, the provisions are positively repugnant and cannot mutually coexist." (Doc. 28, at 15). While "the Code authorizes filing a proof of claim on a debt known to be stale" (Doc. 28, at 15), "[t]he FDCPA seeks to engraft a requirement onto the Bankruptcy Code that Congress importantly omitted," *Townsend*, 2015 WL 4603410, at *12. "One statutory scheme allows all proofs of claim; the other does not." *Id.* "A clearer demonstration of irreconcilable conflict would be difficult to imagine." (Doc. 28, at 13).

---

FDCPA violation targets B–Real's act of filing a proof of claim in the pending bankruptcy case. Application of the FDCPA to this conduct would certainly conflict with the Code.

*In re Chaussee*, 399 B.R. at 237; *see also id.* at 246 n. 27 (Jury, Bankr. J., concurring) ("The majority here finds that the filing of a proof of claim does create such an irreconcilable conflict such that the Code precludes the creation of a claim for relief under FDCPA under our facts and I do not disagree.").

Thus, Johnson' purported FDCPA claim, based on Midland's filing of a proof of claim in her Chapter 13 bankruptcy case, "raises a direct conflict between the Code or Rules and the FDCPA,' preventing both from being enforced."[28] As the later-enacted statute, the Bankruptcy Code must control. And as a creditor under the Bankruptcy Code, Midland has an "absolute right to file a proof of claim." *Townsend*, 2015 WL 4603410, at *12. Therefore, Johnson's FDCPA claim must fail as a matter of law because it presents an irreconcilable conflict with Midland's rights under the Bankruptcy Code.

### B. The conflict between Johnson's FDCPA claim and the Bankruptcy Code cannot be reconciled by suggesting that Midland can comply with both statutes by surrendering its right to file a proof of claim.

Johnson argues that, even if the Court rightly accepts that the Bankruptcy Code provides Midland with the unqualified right to file its proof of claim, her FDCPA claim still poses no conflict with the Code, because Midland could accept the Hobson's choice to comply with both statutes simply by not filing stale proofs of claim. However, Johnson misses the point. As the district court explained, by pressing her FDCPA claim, Johnson "is not urging that [Midland] 'comply' with

---

[28] *Wolferd v. Phelan*, No. 09-CV-1302, 2013 WL 6061562, at *6 n.6 (E.D. Pa. Nov. 18, 2013) (explaining that the Third Circuit's decision in *Simon* "specifically . . . [r]ecogniz[ed] that *irreconcilable conflicts between the FDCPA and bankruptcy laws do exist* with regard to issues such as those *involving proofs of claims*") (emphases added); *see also Rhodes v. Diamond*, 433 F. App'x 78, 80 (3d Cir. 2011) (holding that "claims arising from [a creditor's] conduct in bankruptcy proceedings—*i.e.,* its filing of, and subsequent failure to amend, allegedly inflated proofs of claim—cannot give rise to FDCPA or state law causes of action").

both the Act and the Code." (Doc. 28, at 13). Instead, "she is insisting that [Midland] comply with the Act by surrendering its right under the Code to file a proof of claim on a time-barred debt." (*Id.*).

Indeed, unlike her own FDPCA claim, the claims at issue in *Randolph* and "the dozen or so lower court decisions . . . following *Randolph* . . . all . . . involve[d] *obligations* under the [FDCPA] *and* under the Code's automatic stay and/or discharge injunction provisions." (Doc. 28, at 12 n.19) (emphases added). "In that context, it makes sense to frame the inquiry as whether the party can 'comply' with both statutes, because each statute requires compliance with its corresponding obligation." (*Id.* at 12).

Here, on the other hand, this is not a "situation where both statutes impose obligations on a party." (*Id.*). Thus, "[t]he ability to 'comply' with both statutes . . . is not the proper test when, as here, the case does not concern a comparison of the obligations imposed by one statute with the obligations imposed by another, but rather a comparison of the *obligations* imposed by one statute with the *rights* conferred by another." (*Id.* at 12–13) (emphases added).

In other words, while Johnson "finds no problem with simultaneous enforcement of the FDCPA and the Code because creditors can always decline to file time-barred proofs of claim," the fact remains that "the Bankruptcy Code exists in order to resolve creditor claims, not to avoid them." *Torres v. Asset Acceptance,*

*LLC*, -- F. Supp. 3d. --, No. 14-CV-6542, 2015 WL 1529297, at *7 n.7 (E.D. Pa. Apr. 7, 2015). Yet, Johnson attempts to avoid the irreconcilable conflict between her claim under the FDCPA and Midland's rights under the Bankruptcy Code "by eliminating the whole [claims] process." *Id.* "This is not the vindication of both statutes, it is the negation of one by the enforcement of the other." (Doc. 28, at 13).

Thus, as the district court concluded, "to speak of mutual compliance is nonsensical, because one does not 'comply' with a right, one exercises it." (*Id.*). Here, Midland exercised its right under the Bankruptcy Code to file a proof of claim, regardless of whether the applicable statute of limitations had expired. Johnson's claim, if allowed, would subject Midland to liability under the FDCPA for exercising its rights under the Bankruptcy Code. She cannot avoid that conflict merely by suggesting that Midland forego its rights under the Code in order to comply with its obligations under the FDCPA. Instead, for the reasons explained above, this Court should affirm the district court's conclusion that the FDCPA is impliedly repealed by the Bankruptcy Code to the extent that the two statutory schemes are in irreconcilable conflict—which, as demonstrated by Johnson's purported FDCPA claim, means that a plaintiff cannot state a claim under the FDCPA based solely on a creditor's exercise of its rights under the Code.

**III.    The FDCPA must yield to the Code only to the extent they are in conflict.**

Because Johnson's claim presents an irreconcilable conflict between the Bankruptcy Code and the FDCPA, the latter must yield to the extent of the conflict. *See Miccosukee Tribe*, 619 F.3d at 1299 ("[W]hen two statutes conflict, the later-enacted statute controls to the extent it conflicts with the earlier-enacted statute."); (Doc. 28, at 11) ("The [FDCPA] has not been amended in any relevant respect since its 1977 enactment, while the Code dates from no earlier than 1978."). That is not to say that there remains no room for application of the FDCPA in the realm of bankruptcy, however. Rather, as Johnson suggests, the district court rightly used "a scalpel, not a sledgehammer," in finding that the FDCPA must give way to the Code only to the extent that the two statutes irreconcilably conflict. *See* (Appellant's Br., at 49–50).

Here, that means that a debt collector's accurate proof of claim for an out-of-statute debt cannot be the basis for liability under the FDCPA. Accordingly, this Court should affirm the district court's judgment dismissing Johnson's FDCPA claim, without paying heed to her straw man argument that the Bankruptcy Code does not preclude or impliedly repeal the FDCPA in its entirety (or even entirely with respect to proofs of claim, as discussed below).

**A.    The FDCPA is impliedly repealed by the Bankruptcy Code to the extent that it prohibits a creditor from exercising its rights under the Code.**

This is not the first time this Court has been tasked with determining whether the Bankruptcy Code impliedly repeals some part of another ostensibly applicable, overlapping federal statutory scheme. As the district court noted, "[t]he present situation parallels that in *Devall*, and with like result." (Doc. 28, at 15 n.23) (citing *United States v. Devall*, 704 F.2d 1513, 1515 (11th Cir. 1983)).

In *Devall*, this Court held that, because "the Social Security Act's anti-assignment provision purport[ed] to prohibit the assignment of social security benefits," whereas "the Bankruptcy Code purport[ed] to authorize direct income deductions from the Social Security Administration," the "provision of the later-enacted Bankruptcy Reform Act must prevail over the more general anti-assignment provision of the Social Security Act." *Devall*, 704 F.2d at 1515, 1518. Much like the conflict between the Code and Johnson's FDCPA claim, the *Devall* court concluded that "the conflict between the Bankruptcy Code and the Social Security Act [was] apparent and cannot be reconciled without limiting one to accommodate the other." *Id.* at 1515. Indeed, if one were to substitute the "FDCPA" for the "Social Security Act," it is apparent that this Court's decision in *Devall* compels the same result here:

| _**Devall**_ | _**Johnson**_ |
|---|---|
| The Social Security Act precludes benefits from inclusion in bankruptcy. | The FDCPA precludes debt collectors from filing stale proofs of claim. |
| "Known as the 'anti-assignment' provision, section 207 of the Social Security Act provides that none of the moneys paid or payable or rights existing under this subchapter shall be subject to . . . the operation of any bankruptcy or insolvency law."[29] | "The [FDCPA], as construed by _Crawford,_ provides that it is unlawful for a debt collector to file a proof of claim in a Chapter 13 proceeding knowing the claim to be time-barred." [30] |
| The Bankruptcy Code authorizes payment of all income to the trustee. | The Bankruptcy Code authorizes proofs of claim for time-barred debts. |
| "However, section 1325(b) of the Bankruptcy Reform Act of 1978 states that upon confirmation of a debtor's plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee."[31] | "[T]he Code provides that it is permissible for a creditor to file such a proof of claim if expiration of the limitations period does not extinguish the creditor's right to payment under applicable state law."[32] |

---

[29] _Devall_, 704 F.2d at 1515 (citations, alterations and quotations omitted).

[30] (Doc. 28, at 3).

[31] _Devall_, 704 F.2d at 1515 (citations, alterations and quotations omitted).

[32] (Doc. 28, at 3).

| ***Devall*** | ***Johnson*** |
|---|---|
| The Bankruptcy Code controls to the extent it conflicts with the Social Security Act. | The Bankruptcy Code controls to the extent it conflicts with the FDCPA. |
| "[T]he conflict between the Bankruptcy Code and the Social Security Act is apparent and cannot be reconciled without limiting one to accommodate the other. | "Here, as long as state law preserves a right to payment after the limitations period expires, the Code authorizes filing a proof of claim on a debt known to be stale, while the Act (as construed by *Crawford* ) prohibits that precise practice. |
| We therefore find that the Bankruptcy Code must be construed to limit the anti-assignment provision of the Social Security Act when the debtor voluntarily submits a Chapter 13 plan."[33] | Because, as to creditors under the Code that are also debt collectors under the Act, those contradictory provisions cannot possibly be given effect simultaneously, the provisions are positively repugnant and cannot mutually coexist."[34] |

Again, "[t]he present situation parallels that in *Devall*, and with like result." (Doc. 28, at 15 n.23). Both involve conduct that is permitted by the Bankruptcy Code, yet purportedly forbidden by an earlier-enacted statute. Just as this Court previously found that the Social Security Act's anti-assignment provision could not peaceably coexist with the Code's provision including social security benefits as part of the bankruptcy estate, the same is true with respect to a creditor's right under the Code to file a proof of claim for a debt that would otherwise be time-barred under state law. The earlier statute cannot qualify the right unequivocally and unambiguously conferred by the later one.

---

[33] *Devall*, 704 F.2d at 1518.

[34] (Doc. 28, at 15).

Here, that means that the earlier-enacted FDCPA, which otherwise would prohibit a debt collector from filing a proof of claim for a time-barred debt, cannot "encroach on a creditor's absolute right to file a proof of claim," as provided by the later-enacted Bankruptcy Code. *Townsend*, 2015 WL 4603410, at *12. And to the extent they are in conflict, the FDCPA must yield to the Code. Therefore, the district court correctly concluded that Johnson failed to state a claim under the FDCPA.

**B.  Because Johnson's FDCPA claim irreconcilably conflicts with Midland's rights under the Bankruptcy Code, this Court need not consider whether the Code more broadly precludes the FDCPA.**

Rather than address the specific conflict between her claim under the FDCPA and Midland's rights under the Bankruptcy Code, Johnson sets up two straw man arguments that Midland never made and that the district court did not accept—that "there is no textual preclusion" and that "There Is No Preclusion Under The 'Sweeping' Theory That *All* FDCPA Claims Are Precluded In The Bankruptcy Context"—only to tear them down over the course of nearly 20 pages.[35] In fact, her arguments appear to be largely lifted from a separate *amicus* brief her counsel filed in the Second Circuit.[36] While that court of appeals has

---

[35] *See* (Appellant's Br. at 6, 14–16, 32–50).

[36] *See generally* Brief for the National Association of Consumer Bankruptcy Attorneys as Amicus Curiae in Support of Plaintiff-Appellant and Urging Reversal, *Garfield v. Ocwen Loan Servicing, LLC*, 2015 WL 5173518, No. 15-00527 (2d Cir. June 13, 2015); *see also* Appellant's Unopposed Motion for a 35-Day Extension of Time to File the Opening Brief and Appendix for Plaintiff-Appellant Aleida Johnson, at 2 (May 26, 2015) ("Ms. Johnson's counsel has competing

previously endorsed the broader concept that the FDCPA cannot operate *at all* in bankruptcy proceedings,[37] that is not an issue in this case.

In reality, as Johnson herself ultimately acknowledges,[38] the district court did not find, and Midland does not contend, that the FDCPA is entirely precluded from any application whatsoever in the bankruptcy context. In fact, while Midland "cited and discussed authorities that, largely as a matter of policy, would preclude any action under the Act that so much as touches upon matters also addressed by the Code . . . [or] those implicating conduct 'inside' the bankruptcy system," the district court recognized that it "need not consider these more sweeping approaches," since Johnson's "[cause of] action is clearly barred due to the irreconcilable conflict between the specific provisions of the Act and Code at issue." (Doc. 28, at 16 n.24).

Likewise, this Court should pay no heed to Johnson's straw man argument that the Bankruptcy Code does not preclude the FDCPA in its entirety. Rather, as this Court held in *Devall*, the FDCPA is precluded by the Bankruptcy Code only to

---

deadlines and obligations in other matters, including . . . preparing an amicus brief in *Garfield v. Ocwen Loan Servicing, LLC*, No. 15-527 (2d Cir.) . . . .").

[37] *See Simmons*, 622 F.3d at 96 ("The FDCPA is designed to protect defenseless debtors and to give them remedies against abuse by creditors. There is no need to protect debtors who are already under the protection of the bankruptcy court, and there is no need to supplement the remedies afforded by bankruptcy itself.").

[38] *See* (Appellant's Br., at 17–18) ("Because the district court rested its holding on narrow grounds . . .[,] the court did not consider the 'more sweeping approaches' to preclusion adopted by the Second and Ninth Circuits.").

40

the extent that it cannot be reconciled with a creditor's express right under the Code to file a proof of claim, even for a debt known to be outside the statute of limitations. "[I]n this specific factual situation, application of the FDCPA is precluded by the Bankruptcy Code." *B-Real*, 405 B.R. at 434 (quotation omitted).

### C.    There remains a sphere of operation for the FDCPA in the bankruptcy context.

There still remains a sphere of operation for the FDCPA within the realm of proofs of claim in bankruptcy, notwithstanding the conflict posed between Johnson's FDCPA claim and the rights conferred by the Bankruptcy Code, and contrary to her characterization of Midland's arguments and the district court's conclusion. For example, in the course of acknowledging the unavoidable conflict between the Social Security Act and the Bankruptcy Code, this Court in *Devall* recognized that "[a] narrow implied limitation of section 407 appears to be the only way to effectuate the operation of a Chapter 13 plan for an individual whose regular income consists of social security benefits." *Devall*, 704 F.2d at 1518. Similarly, "a narrow implied limitation" of the FDCPA would exclude accurate proofs of claim that supply all of the information required by the Bankruptcy Code and Rules for the purpose of allowing a debtor to assess the timeliness of a creditor's claim.

Indeed, that is the only construction that allows both statutes to have the greatest sphere of operation without one intruding upon the other. For example, it

is at least conceivable that a plaintiff could state a claim under the FDCPA (as construed by *Crawford*) if a debt collector were to file a proof of claim that actually misrepresented the last payment date, thereby misleading the least sophisticated consumer into believing that the claim was timely, when it fact it was not. There is no remedy in the Bankruptcy Code for such conduct, because neither the Code nor the Rules provides for striking or disallowing a proof of claim based on the inclusion of inaccurate information; nor does the Code provide a debt collector with the right to file a proof of claim that misrepresents the very information intended to permit a debtor (or the trustee) to assess its timeliness.

In that case, if a debt collector were to file such a proof of claim, then (and only then) Johnson would be correct to argue that such conduct is prohibited (or at least not allowed) by both statutory schemes. But as it happens, Johnson does not dispute that Midland's proof of claim accurately conveyed all of the information required by the Bankruptcy Code and Rules, including all of the information she would need in order to object to Midland's proof of claim on the basis that the debt is time-barred. Instead, Johnson purports to state a claim based on nothing more than the fact that Midland's proof of claim was subject to disallowance under 11 U.S.C. § 502 because it was unenforceable under state law; yet, there can be no serious dispute that "the Bankruptcy Code and applicable jurisprudence allow a creditor to file a proof of claim on a debt even though it may be later determined to

be 'unenforceable.'" *B-Real, LLC*, 405 B.R. at 432; *see also In re McLean*, 794 F.3d at 1321 (noting the inherent "recognition within the Bankruptcy Code that some proofs of claim will be unenforceable").

Thus, while another debtor might hypothetically state a claim under the FDCPA based on a creditor's proof of claim in bankruptcy, the fact remains that Johnson's purported FDCPA claim, based solely on Midland's out-of-statute proof of claim, irreconcilably conflicts with Midland's "right to payment of its time-barred debt and a consequent *entitlement* to file a proof of claim." (Doc. 28, at 4) (emphasis added). At least as "to creditors under the Code that are also debt collectors under the Act," the FDCPA's "contradictory provisions cannot possibly be given effect simultaneously" with the rights conferred by the Code. (*Id.* at 15). Indeed, "[a] clearer demonstration of irreconcilable conflict would be difficult to imagine." (*Id.* at 13). Accordingly, this Court should affirm the district court's judgment dismissing Johnson's FDCPA claims for failure to state a claim.

## CONCLUSION

Because Midland had a right to payment of Johnson's debt under Alabama law even after the statute of limitations had expired, Midland, as a creditor under the Bankruptcy Code, had the express right to file its proof of claim. Yet, the FDCPA (as construed by this Court in *Crawford*) would prohibit that very filing. Therefore, this Court should affirm the district court's conclusion that the FDCPA

and the Bankruptcy Code are in irreconcilable conflict, and that the earlier-enacted

FDCPA therefore "must give way to the Code." (Doc. 28, at 15).

/s/ Jason B. Tompkins
One of the Attorneys for Appellees

**Of Counsel:**

Jason B. Tompkins
(jtompkins@balch.com)
Chase T. Espy
(cespy@balch.com)
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), Appellees hereby certify that this brief, in Times New Roman 14-point typeface, complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 11,704 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

*/s/ Jason B. Tompkins*
One of the Attorneys for Appellees

**Of Counsel:**

Jason B. Tompkins
(jtompkins@balch.com)
Chase T. Espy
(cespy@balch.com)
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203
Telephone: (205) 251-8100
Facsimile:  (205) 226-8798

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Federal Rule of Appellate Procedure 25(c)(2) and 11th

Cir. R. 25-3, I hereby certify that I have filed the foregoing brief using the Court's

ECF system, which will electronically serve the following counsel of record on this

14th day of September, 2015:

Daniel L. Geyser                        Earl P. Underwood, Jr.
MCKOOL SMITH, P.C.                      Kenneth J. Riemer
300 Crescent Court, Suite 1500          UNDERWOOD & RIEMER, P.C.
Dallas, TX 75201                        21 S Section Street
Tel.: (214) 978-4014                    Fairhope, AL 36532
Fax: (214) 978-4044                     Tel.: (251) 990-5558
dgeyser@mckoolsmith.com                 epunderwood@alalaw.com
                                        kjr@alaconsumerlaw.com


On this same date, the original and additional copies of the brief were filed

by Federal Express overnight delivery, addressed as follows:

Clerk's Office – Appeal No. 15-11240
U.S. Court of Appeals – Eleventh Circuit
56 Forsyth Street NW
Atlanta, GA 30303.

Respectfully submitted,

*/s/ Jason B. Tompkins*
Of Counsel

46